UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X
:
UNITED STATES OF AMERICA                          :
:
-v-                                      :
:                S8 23 Cr. 501 (JPC)
FRANCISCO ALBERTO LOPEZ REYES and                 :
EDWARD EUSTATE JIMENEZ,                            :                ORDER
:
Defendants.                 :
:
--------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

     Based on issues discussed at the charge conferences held on May 20, 2026, and May 21,

2026, attached to this Order are the revised jury charge and verdict form.

     SO ORDERED.

Dated: May 25, 2026
      New York, New York

                              JOHN P. CRONAN
                       United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                  :

UNITED STATES OF AMERICA,                :

                                  :

     -v-                              :

                                  :         23 Cr. 501 (JPC)

FRANCISCO ALBERTO LOPEZ REYES and  :
EDWARD EUSTATE JIMENEZ,        :

                                  :

                   Defendants.     :

                                  :
-------------------------------------------------------------------X


**JURY CHARGE**

**Table of Contents**

I.    Introduction ........................................................................................................................ 1
II.   General Instructions .......................................................................................................... 2
  A.   Role of the Court ........................................................................................................ 2
  B.   Role of the Jury .......................................................................................................... 2
  C.   Equality of the Parties ............................................................................................... 2
  D.   Presumption of Innocence .......................................................................................... 3
  E.   Proof Beyond a Reasonable Doubt ............................................................................ 4
  F.   Nature of the Evidence ............................................................................................... 5
  G.   Direct and Circumstantial Evidence .......................................................................... 6
  H.   Inferences ................................................................................................................... 7
  I.   Rulings on Evidence and Objections ......................................................................... 8
  J.   Number of Witnesses Called ..................................................................................... 8
  K.   Credibility of Witnesses ............................................................................................ 8
  L.   Stipulations .............................................................................................................. 10

III.  Substantive Instructions ................................................................................................. 10
  A.   Summary of the Indictment ..................................................................................... 10
  B.   Conjunctively Charged Counts ................................................................................ 12
  C.   Count Three: Narcotics Distribution ....................................................................... 13
     1.   Count Three:  Elements of the Offense ............................................................ 13
     2.   Count Three:  Aiding and Abetting .................................................................. 15
     3.   Count Three:  Use Resulting in Death .............................................................. 17
  D.   Count Two: Conspiracy to Distribute Narcotics ..................................................... 18
     1.   Count Two: Elements of the Offense ............................................................... 19
        i.    Element One: Existence of the Conspiracy ............................................... 20
           a.   Agreement ............................................................................................ 20
           b.   Object of the Conspiracy ..................................................................... 22
        ii.   Element Two: Knowingly and Willfully Becoming a Member .................. 24
           a.   Count Two:  "Unlawful," "Willfully," "Knowingly," and "Intentionally," Defined 25
           b.   Count Two:  Duration and Extent of Participation in Conspiracy ........ 25
     2.   Count Two:  Drug Type and Quantity .............................................................. 28
     3.   Count Two:  Use Resulting in Death ................................................................ 30
  E.   Count One: Continuing Criminal Enterprise ........................................................... 31
     1.   Count One:  Elements of the Offense ............................................................... 31
        i.    Element One: Commission of a Federal Narcotics Felony Offense .......... 32
        ii.   Element Two: Continuing Series of Violations ......................................... 32
        iii.  Element Three: Five or More Persons ....................................................... 36
        iv.   Element Four: Organizer, Supervisor, or Manager .................................... 36
        v.    Element Five: Substantial Income or Resources ....................................... 37
     2.   Count One:  Additional Findings ..................................................................... 38

F.    Count Four: Conspiracy to Commit Money Laundering ................................................ 39

1.    Count Four:  Elements of the Offense ........................................................ 40
i.    Element One: Existence of the Conspiracy............................................. 40
a.    Agreement...................................................................................... 40
b.    Object of the Conspiracy .............................................................. 41
ii.    Element Two: Knowingly and Willfully Becoming a Member............................... 46

G.    Venue ........................................................................................................................ 46
H.    Motive ...................................................................................................................... 47

IV.    Further General Instructions ............................................................................................. 47

A.    Variance in Dates..................................................................................................... 47
B.    Particular Investigative Techniques Not Required .................................................. 48
C.    Preparation of Witnesses.......................................................................................... 48
D.    Testimony of Witnesses Pursuant to a Grant of Immunity....................................... 49
E.    Testimony of Cooperating Witnesses ....................................................................... 49
F.    Expert Witnesses....................................................................................................... 51
G.    Law Enforcement Witnesses...................................................................................... 52
H.    Uncalled Witnesses ................................................................................................... 52
I.    Summary Charts: Admitted as Evidence ................................................................. 53
J.    Illustrative Aids........................................................................................................ 53
K.    Spanish Language Testimony .................................................................................... 53
L.    Use of Audio Recordings, Transcripts, and Translations ....................................... 54
M.    The Defendants' Right Not to Testify ....................................................................... 54
N.    Persons Not on Trial or Not Indicted....................................................................... 55
O.    Use of Evidence Obtained Pursuant to Searches .................................................... 55

V.    Final Instructions Regarding Jury Deliberations ............................................................. 56

A.    Duties of the Foreperson........................................................................................... 56
B.    Right to See Exhibits and Hear Testimony; Communications with Court ....................... 56
C.    Notes ........................................................................................................................ 57
D.    Improper Considerations:  Race, Religion, National Origin, Sex, or Age........................ 57
E.    Verdict Form and Return of Verdict.......................................................................... 57
F.    Juror Oath................................................................................................................. 58
G.    Everyone Must be Present ........................................................................................ 59
H.    Remaining Issues ...................................................................................................... 59

VI.    Conclusion ........................................................................................................................ 59

## I.  Introduction

Members of the jury, you have now heard all of the evidence in the case, as well as the final arguments of the parties.  We have reached the point where you are about to undertake your final function as jurors.  You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict.

These instructions will include some general instructions about your role and about how you are to decide the facts of the case, including the burden of proof you must apply.  Many of these instructions would apply to any trial.

I will also give you more specific instructions about the legal rules applicable to this particular case, including a description of the elements of the charges against the defendants.

And lastly, I will give you instructions on the general rules governing your deliberations.

I will read most, if not all, of these instructions to you.  It is not my favorite way to communicate with a jury, but there is a crucial need for precision in what I tell you.  The law is stated and expressed in words, and those words are very carefully chosen.  So when I tell you the law, it is critical that I use exactly the right words.

I have given each of you a copy of this charge.  If you find it easier to listen and understand while you are following along with me, please do so.  If you prefer, you can just listen and not follow along.  Either way, you will have a copy of these instructions with you in the jury room, so you can refer to them if you want to re-read any portion to facilitate your deliberations.  Because you will have a copy in the jury room, do not worry if you miss a word or two.  For now, listen carefully and try to concentrate on the substance of what I am saying.  I ask for your patience, cooperation, and attention.

1

You will also have with you in the jury room a verdict form on which to record your verdict. That form will list the questions you should consider.

## II. General Instructions

### A.     Role of the Court

My duty at this point is to instruct you as to the law. It is your duty to accept these instructions of law, along with the instructions I have given you during the course of the trial, and to apply them to the facts as you determine them. It has been my duty to preside over the trial and to decide what testimony and evidence were proper under the law for your consideration.

On these legal matters, you must take the law as I give it to you. If anyone has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. You should consider these instructions together as a whole; in other words, you should not isolate or give undue weight to any particular instruction or part of the instructions.

### B.     Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve whatever conflicts, if any, there may be in the evidence presented by the parties. You draw whatever reasonable inferences you believe should be drawn from the facts as you have determined them, and you determine the weight of the evidence.

It is your sworn duty as jurors to determine the facts and to follow the law as I give it to you. You must not substitute your own notions or opinions of what the law is or ought to be.

### C.     Equality of the Parties

I remind you that in reaching your verdict, you are to perform your duty of finding the facts without bias or prejudice as to any party. You must remember that all parties stand as equals

before a jury in the courts of the United States. You must also remember that it would be improper for you to allow any feelings you might have about the nature of the crimes charged to interfere with your decision-making process.

This case is important to the defendants, who are charged with serious crimes. It is also important to the government, for the enforcement of criminal laws is a matter of prime concern to the public.

The fact that the prosecution is brought in the name of the United States does not entitle the government or its witnesses to any greater consideration than that accorded to any other party. By the same token, the government is entitled to no less consideration. Your verdict must be based solely on the evidence or the lack of evidence.

**D.      Presumption of Innocence**

Now, I will instruct you on the presumption of innocence and the government's burden of proof in this case. The defendants have pleaded not guilty. In doing so, they have denied every allegation charged against them. As a result of the defendants' pleas of not guilty, the burden is on the prosecution to prove their guilt beyond a reasonable doubt. This burden never shifts to the defendants for the simple reason that the law never imposes on a defendant in a criminal case the burden or duty of calling any witness or producing any evidence.

The law presumes the defendants to be innocent of all charges against them. I therefore instruct you that the defendants are to be presumed by you to be innocent of each charged count throughout your deliberations. You also must consider each count separately.

The defendants began the trial here with a clean slate. This presumption of innocence alone is sufficient to acquit the defendants unless you as jurors are unanimously convinced beyond a reasonable doubt of their guilt, after careful and impartial consideration of all the evidence in this

case. If the prosecution fails to sustain its burden as to a count, then you must find the defendants not guilty of that count. The defendants were entitled to this presumption when the trial began; it remains with them even now as I speak to you; and it will continue with them during your deliberations unless and until you are convinced that the prosecution has proven their guilt beyond a reasonable doubt.

**E.      Proof Beyond a Reasonable Doubt**

Now, the next question naturally presents itself, what is reasonable doubt? The words almost define themselves. It is a doubt that a reasonable person has after carefully weighing all of the evidence. It is a doubt that would cause a reasonable person to hesitate to act in a matter of importance in his or her personal life. On the other hand, a reasonable doubt is not speculation or suspicion. It is not an excuse to avoid the performance of an unpleasant duty. And it is not sympathy.

Proof beyond a reasonable doubt therefore does not require the government to establish proof of guilt as an absolute certainty or beyond all possible doubt. Instead, the government must establish guilt beyond a reasonable doubt with proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs.

If after fair and impartial consideration of all the evidence, or the lack of evidence, you have a reasonable doubt as to a defendant's guilt on the count of the Indictment you are considering, then you must find him not guilty of that count. On the other hand, if after fair and impartial consideration of all the evidence you are satisfied of a defendant's guilt on a particular count beyond a reasonable doubt, it is your duty to find the defendant guilty of that count.

4

**F.**      **Nature of the Evidence**

In determining the facts, you must rely upon your own recollection of the evidence. What is evidence? Evidence consists of the testimony of witnesses, the exhibits that I have received in evidence, and the stipulations of the parties.

The statements and arguments made by the lawyers are not evidence. Their arguments were intended to convince you what conclusions you should draw from the evidence or lack of evidence. Now, those arguments are important. You should weigh and evaluate them carefully. But you must not confuse them with the evidence. And your recollection of the evidence at trial governs, not the statements of the lawyers.

You should also bear in mind that a question put to a witness is never evidence. It is the answer to the question that is evidence. One exception to this is that you may not consider any answer that I directed you to disregard or that I ordered to be stricken from the record.

The personalities and the conduct of counsel are not in any way at issue. If you formed opinions of any kind about any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior, those opinions should not enter into your deliberations.

Nothing I have said during trial is evidence. If I commented on the evidence at any time, do not accept my statements in place of your recollection or your interpretation.

At times I may have admonished a witness or directed a witness to be responsive to questions or to keep his or her voice up. At times I asked a question myself. Any questions that I asked, or instructions that I gave, were intended only to clarify the presentation of evidence and to bring out something that I thought might be unclear. You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or any party in the case, by reason of any comment, question, or instruction of mine. Nor should you infer that I might have

5

any views as to the credibility of any witness, as to the weight of the evidence, or as to how you should decide any issue that is before you.  That is entirely your role.

## G.    Direct and Circumstantial Evidence

There are two types of evidence that you may properly use in deciding whether a defendant is guilty or not guilty of the crimes with which he is charged.

One type of evidence is called direct evidence.  Direct evidence of a fact in issue is presented when a witness testifies to that fact based on that witness's own knowledge, by virtue of what he or she personally saw, heard, or observed.

The second type of evidence is circumstantial evidence.  Circumstantial evidence is evidence that tends to prove a disputed fact indirectly by proof of other facts.  There is a simple example of circumstantial evidence that is often used in this courthouse.

Assume that when you came into the courthouse this morning that the sun was shining and it was a nice day outdoors.  Assume that throughout the day, the courtroom shades were drawn and you could not look outside.  Assume further that as you were sitting here, someone walked in with an umbrella that was dripping wet, and then, a few moments later, somebody else walked in with a raincoat that was also dripping wet.  Now, because you were indoors and unable to look outside to see whether it was raining, you would have no direct evidence as to whether it was raining.  But, on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it was raining.

With circumstantial evidence, you must be careful to come to a reasonable inference by taking into account all of the evidence.  For example, if you live in an apartment building and wake up in the morning and see that the sidewalk is wet, but the street is dry, it may not necessarily be

reasonable to infer that it rained the night before. Rather, a more reasonable inference may be that the apartment building staff hosed down the sidewalk.

That is all there is to circumstantial evidence. You infer based on your reason, experience, and common sense from one established fact the existence or nonexistence of some other fact.

To be very clear, circumstantial evidence may be given as much weight as direct evidence. Many material facts, such as state of mind, are not easily proven by direct evidence. Usually, such facts are established by circumstantial evidence and the reasonable inferences you draw. The law makes no distinction between direct and circumstantial evidence but simply requires that before convicting a defendant, the jury must be satisfied of a defendant's guilt beyond a reasonable doubt, based on all of the evidence in the case.

## H.    Inferences

I just mentioned inferences. And in their arguments, you have heard the attorneys ask you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The government may have asked you to draw one set of inferences, while the defense may have asked you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork, suspicion, or speculation. An inference is a reasonable, logical deduction or conclusion that you, the jury, are permitted to draw—but not required to draw—from the facts that have been established by either direct or circumstantial evidence.

7

But please remember, however, that while you should rely on your experience and common sense in drawing inferences, you may not use your experience and common sense to fill in or create evidence that does not exist. You use them only to draw reasonable inferences from proven facts or to weigh and evaluate the evidence provided during the trial.

## I.    Rulings on Evidence and Objections

On the topic of inferences, you should draw no inference or conclusion for or against any party by reason of lawyers making objections or my rulings on such objections. Counsel have not only the right, but the duty, to make legal objections when they think that such objections are appropriate. Nor were my rulings on objections during trial any indication of my views or opinions of this case. Further, do not concern yourself with what was said at sidebar conferences or during my discussions with counsel or the parties outside your presence. Those discussions related to issues of law.

## J.    Number of Witnesses Called

The fact that a party called more witnesses and introduced more evidence than another does not mean that you should necessarily find the facts in favor of that party. The number of witnesses testifying about any particular issue is not controlling. By the same token, you do not have to accept the testimony of any witness who has not been contradicted or impeached, if you find the witness not to be credible. Keep in mind that the burden of proof is always on the government and that neither defendant was required to call any witness or offer any evidence, since they are presumed to be innocent.

## K.    Credibility of Witnesses

I am going to give you a few general instructions as to how you may determine whether witnesses are credible and reliable, whether the witnesses told the truth at this trial, and whether

8

they knew what they were talking about.  How do you determine that?  When evaluating witness credibility, you should use your common sense, good judgment, and life experiences.

Consider how well the witness was able to observe or hear what he or she testified about.  The witness may be honest but mistaken.  How did the witness's testimony impress you?  Did the witness appear to be testifying honestly and candidly?  Were the witness's answers direct or were they evasive?  Consider the witness's demeanor, manner of testifying, and the strength and accuracy of the witness's recollection.  Consider whether any outside factors might have affected a witness's ability to perceive events.

Consider the substance of the testimony.  How does the witness's testimony compare with other proof in the case?  Is it corroborated or is it contradicted by other evidence?  If there is a conflict, does any version appear reliable, and if so, which version seems more reliable?

In addition, you may consider whether a witness had any possible bias or relationship with a party or any possible interest in the outcome of the case.  Such a bias or relationship does not necessarily make the witness unworthy of belief.  These are simply factors that you may consider.

If a witness made statements in the past that are inconsistent with his or her testimony during the trial concerning facts that are at issue here, you may consider that fact in deciding how much of the testimony, if any, to believe.  In making this determination, you may consider whether the witness purposely made a false statement, or whether it was an innocent mistake.  You may also consider whether the inconsistency concerns an important fact or merely a small detail, as well as whether the witness had an explanation for the inconsistency, and if so, whether that explanation appealed to your common sense.

If you find that a witness has testified falsely as to any material fact or if you find that a witness has been previously untruthful when testifying under oath or otherwise, you may reject

9

that witness's testimony in its entirety or you may accept only those parts that you believe to be truthful or that are corroborated by other independent evidence in the case.

It is for you, the jury, and for you alone, not the lawyers, or the witnesses, or me as the judge, to decide the credibility of the witnesses who testified and the weight that their testimony deserves.

## L.    Stipulations

You have heard evidence in the form of stipulations of fact. A stipulation of fact is an agreement between the parties that a certain fact is true. You must accept as true any facts contained in these stipulations. However, it is for you to determine the weight, if any, to be given to that fact.

You also have heard evidence in the form of stipulations of testimony. A stipulation of testimony is an agreement between the parties that, if a witness is called, that witness would give certain testimony. You must accept as true the fact that the witness would have given that testimony. However, here too, it is for you to determine the weight, if any, to be given to that testimony.

### III.  Substantive Instructions

## A.    Summary of the Indictment

The defendants in this matter, Francisco Alberto Lopez Reyes and Edward Eustate Jimenez, have been formally charged in what is called an Indictment. An indictment is simply an accusation. It is no more than the means by which a criminal case is started. It is not evidence. It is not proof of a defendant's guilt. You are to give no weight to the fact that an indictment has been returned against the defendants.

10

Before you begin your deliberations, you will be provided with a copy of the relevant portions of the Indictment. I will not read the entire Indictment to you at this time. Rather, I will first summarize the offenses charged in the Indictment and then explain in detail the elements of the charged offenses.

The Indictment contains four counts or "charges." Not all of the counts apply to both defendants. The order of the counts is irrelevant; indeed, I will be going in a different order when I instruct you as to the elements of each charge.

Count One charges Mr. Lopez Reyes with, from approximately April 2022 through approximately September 2024, engaging in what is called a continuing criminal enterprise, with him acting as a principal administrator, organizer, or leader, and with at least one of the violations of that enterprise involving at least three kilograms of mixtures or substances containing detectable amounts of para-fluorofentanyl, at least twelve kilograms of mixtures or substances containing detectable amounts of fentanyl, or at least fifteen kilograms of mixtures or substances containing detectable amounts of methamphetamine. As part of that continuing criminal enterprise, the Indictment alleges that Mr. Lopez Reyes committed seven violations of the federal narcotics laws. I will explain those seven alleged violations to you shortly. Count Two charges both defendants—Mr. Lopez Reyes and Mr. Jimenez—with, from approximately April 2022 through approximately September 2024, participating in a conspiracy to violate the federal narcotics laws by agreeing to distribute, and/or to possess with intent to distribute, certain controlled substances, specifically, para-fluorofentanyl, fentanyl, methamphetamine, heroin, and/or cocaine, the use of which controlled substances resulted in the death of a woman named Holly Holderbaum on February 25, 2024. Count Three charges Mr. Lopez Reyes and Mr. Jimenez with, on or about February 16, 2024, distribution, possession with intent to distribute, and/or aiding and abetting the distribution

11

of or the possession with intent to distribute, certain controlled substances, specifically, para-fluorofentanyl and fentanyl, the use of which controlled substances resulted in the death of Holly Holderbaum on February 25, 2024.  Count Four charges Mr. Lopez Reyes with participating in a conspiracy to commit money laundering from approximately May 2022 through approximately February 2024.

**B.    Conjunctively Charged Counts**

You will note that the conjunctive word "and" is used between certain charging words in the Indictment.  For example, Count Three charges that the defendants "distributed **and** possessed with intent to distribute controlled substances . . . **and** aided and abetted the same."  Conjunctive phrasing—by which I mean, the use of the word "and"—is used between charging words in the remaining counts of the Indictment as well.

Where a statute specifies multiple alternative ways in which an offense may be committed, an indictment may allege the multiple ways by using the word "and."  If only one of the alternatives is proved beyond a reasonable doubt, that is sufficient for conviction, so long as you agree unanimously as to that alternative.  You therefore should treat the conjunctive "and" as it appears in the Indictment as being the disjunctive "or" for those offenses in which I instruct you that there are multiple alternative ways in which the offense may be committed.  Thus, taking as an example the portion of Count Three that I just mentioned, it is enough that the evidence shows beyond a reasonable doubt that the defendants "distributed **or** possessed with intent to distribute controlled substances . . . **or** aided and abetted the same."

I will now explain the elements of each count.  And as I mentioned, I will go in a different order than how the offenses are listed in the Indictment.

## C.    Count Three: Narcotics Distribution

I will start with Count Three.  Count Three charges both defendants, Mr. Lopez Reyes and Mr. Jimenez, with distributing, or possessing with the intent to distribute, controlled substances—specifically, para-fluorofentanyl and/or fentanyl—and aiding and abetting the same, on or about February 16, 2024, and that the death of Holly Holderbaum resulted from the use of controlled substances that they distributed, possessed with the intent to distribute, or aided and abetted the same.  To quote from the Indictment, Count Three charges:

> On or about February 16, 2024, in the Southern District of New York and elsewhere, FRANCISCO ALBERTO LOPEZ REYES and EDWARD EUSTATE JIMENEZ, the defendants, knowingly and intentionally distributed and possessed with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(l), and aided and abetted the same.

> The controlled substances involved in the offense were: (i) mixtures and substances containing a detectable amount of fentanyl; and (ii) mixtures and substances containing a detectable amount of para-fluorofentanyl, an analogue of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(C).

> The use of such controlled substances resulted in the death of Holly Holderbaum on or about February 25, 2024, in Dover, Delaware.

### 1.  Count Three:  Elements of the Offense

To satisfy its burden of proof with respect to Count Three, the government must prove beyond a reasonable doubt three elements as to each defendant:

*First*, the defendant you are considering distributed, or possessed with the intent to distribute, a mixture or substance containing a controlled substance;

*Second*, the defendant did so knowingly and intentionally; and

*Third*, the controlled substance was para-fluorofentanyl or fentanyl.  As to this element, I instruct you that para-fluorofentanyl and fentanyl are both controlled substances under federal law. With respect to this element, the government need prove beyond a reasonable doubt only that the

13

defendant you are considering distributed or possessed with intent to distribute para-fluorofentanyl *or* fentanyl. The government need not prove that the offense involved both. You also do not need to make a finding as to the quantity of any controlled substance that you find a defendant distributed for purposes of Count Three.

I will now define some terms that I just used: "distribution," "possession," "with intent to distribute," "knowingly," and "intentionally." My definitions of these terms apply to their use in Count Three, as well as their use in the other counts.

### "Distribution"

The word "distribution" means actual, constructive, or attempted transfer. To distribute simply means to deliver, to pass over, to hand over something to another person, or to cause it to be delivered, passed on, or handed over to another. Distribution does not require a sale. Activities in furtherance of the ultimate transfer of a controlled substance, such as vouching for the quality of the controlled substance, negotiating for or receiving the price, and supplying or delivering the controlled substance may constitute distribution.

### "Possession"

"Possession" means having custody or control over an object. The legal concept of possession may differ from the everyday usage of the term, so let me explain this concept in some detail. Actual possession is what most of us think of as possession; that is, having physical custody or control of an object, as I possess this pen. A person need not have actual, physical possession—that is, physical custody of an object—in order to be in legal possession of it. If an individual has the ability to exercise substantial control over an object, even if the person does not have the object in his physical custody, and that person has the intent to exercise such control, then he is in possession of that object. This is called "constructive possession."

14

Control over a controlled substance may be demonstrated in many ways.  A person can possess a controlled substance because he has an agreement with a person who has physical custody of the controlled substance and can direct the movement or transfer of the controlled substance.  Similarly, an individual may have possession of a controlled substance that is not found on his person because that individual has a relationship to the location where it is maintained.  The law also recognizes that possession may be sole or joint.  If one person alone has actual or constructive possession of a controlled substance, then the possession is sole.  If more than one person has possession of the controlled substance, whether actual or constructive, then possession is joint.  A person also can possess an object without being the owner of that object.

"With Intent to Distribute"

Possession of a controlled substance "with intent to distribute" means that a person possessed a controlled substance with a state of mind or purpose to transfer it to another person.  Since no one can read another's mind, the determination as to a person's intent can be inferred from his behavior.

"Knowingly" and "Intentionally"

A person acts "knowingly" if he acts voluntarily and deliberately and not mistakenly or inadvertently.  A person acts "intentionally" if he acts purposely and voluntarily and with the specific intent to disobey or disregard the law.

### 2.  Count Three:  Aiding and Abetting

The defendants are also charged in the alternative with aiding and abetting the crime charged in Count Three.  I will now instruct you on the concept of aiding and abetting, which is relevant to Count Three and, as you will see, to some of the violations alleged in Count One.

15

A defendant can be convicted of a crime either if he committed the crime himself or if he aided and abetted the commission of the crime by one or more people. It is not necessary for the government to show that the defendant himself committed a crime in order for you to find him guilty. If you do not find beyond a reasonable doubt that the defendant committed a crime, you may, under certain circumstances, still find him guilty as an aider and abettor of the crime.

In the context of Count Three, even if a defendant did not himself distribute, or possess with the intent to distribute, fentanyl and/or para-fluorofentanyl, he would still be guilty of Count Three if the government has proved beyond a reasonable doubt that he aided or abetted one or more other persons to commit that crime.

The first requirement is that the crime charged was actually committed. No one can be guilty of aiding and abetting the criminal acts of another if no crime was committed by the other person. But if a crime was committed, then you may consider whether the defendant or another person aided or abetted the commission of the crime. The second requirement is that the defendant, knowing that such crime was being committed, intentionally associated himself with that crime. The third requirement is that the defendant intentionally took some action to help the crime succeed.

The mere presence of a person where a crime is being committed, even coupled with knowledge by the person that a crime is being committed, or the mere acquiescence by that person in the criminal conduct of others, even with guilty knowledge, is insufficient to establish aiding and abetting.

The Government must prove that an aider and abettor took some conscious action that furthered the commission of the crime and that he did so with the intent to bring about the crime. To determine whether a person aided and abetted a crime, ask yourself:

16

- Did he participate in the crime charged as something he wished to bring about?

- Did he associate himself with the criminal venture knowingly?

- Did he seek by his actions to make the criminal venture succeed?

If, but only if, the Government proves beyond a reasonable doubt that the answer to all three questions is "yes," then a person is an aider and abettor, and therefore guilty of the offense.

### 3. Count Three:  Use Resulting in Death

If, and only if, you find that the government has proved beyond a reasonable doubt that either defendant is guilty of Count Three, then you must make an additional finding as to whether the government has also proved beyond a reasonable doubt that the death of Holly Holderbaum resulted from the use of at least one controlled substance, namely, para-fluorofentanyl and/or fentanyl, that was distributed, possessed with the intent to distribute, or which distribution or possession with intent to distribute was aided or abetted, by a defendant you found guilty.

To find that Ms. Holderbaum's death "resulted from" the use of para-fluorofentanyl and/or fentanyl, you must find that the government has proved that at least one of those substances was the "but-for cause" of Ms. Holderbaum's death.  In other words, the government must prove beyond a reasonable doubt that Ms. Holderbaum would not have died when she did, but for the ingestion of one or more of those controlled substances.

You do not need to find that the controlled substance was the only factor that brought about Ms. Holderbaum's death.  Indeed, it can be sufficient if one or more of the controlled substances caused Ms. Holderbaum's death in combination with other causes, so long as you find that the government has proved that Ms. Holderbaum would not have died when she did absent her ingestion of one or more of the controlled substances.  Put another way, you must decide whether

17

the incremental effect of the para-fluorofentanyl and/or fentanyl was a cause without which Ms. Holderbaum's death would not have occurred.

The government does not have to prove that the defendants intended to cause the death of Ms. Holderbaum or any other person for that matter.  The government also does not have to prove that death was foreseeable to the defendants.  In this regard, the law imposes what is known as "strict liability" on a defendant if death results from the use of the controlled substance(s) you are considering.

On these questions, you may enter these findings only if you are unanimous, that is, if you all agree, that the government proved beyond a reasonable doubt that Holly Holderbaum's death resulted from the use of a controlled substance or controlled substances—whether para-fluorofentanyl, fentanyl, or both—that were distributed, possessed with the intent to distribute, or which distribution or possession with intent to distribute was aided or abetted, by a defendant guilty of Count Three.

You will be given a verdict sheet on which to record the jury's answer to these questions.

### D. Count Two: Conspiracy to Distribute Narcotics

Count Two charges both defendants, Mr. Lopez Reyes and Mr. Jimenez, with participating in a conspiracy to distribute controlled substances, here, fentanyl, para-fluorofentanyl, methamphetamine, heroin, and cocaine.  Count Two charges:

> From at least in or about April 2022, up to and including September 2024, in the Southern District of New York, the Dominican Republic, India, and elsewhere, FRANCISCO ALBERTO LOPEZ REYES and EDWARD EUSTATE JIMENEZ, the defendants, and others known and unknown, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other to violate the controlled substance laws of the United States.

> It was a part and an object of the conspiracy that FRANCISCO ALBERTO LOPEZ REYES and EDWARD EUSTATE JIMENEZ, the defendants, and others known and

18

unknown, would and did distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(l).

The controlled substances involved in the offense were: (i) 100 grams and more of mixtures and substances containing a detectable amount of para-fluorofentanyl, an analogue of fentanyl, in violation of Title 21, United States Code, Section 841(b)(l)(A); (ii) 400 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841 (b)(1)(A); (iii) 500 grams and more of mixtures and substances containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, in violation of Title 21, United States Code, Section 841(b)(l)(A); (iv) one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(l)(A); and (v) 500 grams and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(B).

The use of such controlled substances resulted in the death of Holly Holderbaum on or about February 25, 2024, in Dover, Delaware.

### 1.   Count Two: Elements of the Offense

To satisfy its burden of proof with respect to the conspiracy charged in Count Two, the government must prove beyond a reasonable doubt the following two elements as to each defendant:

*First*, the existence of the conspiracy charged in Count Two of the Indictment; that is, there was an agreement or understanding between two or more people to violate the provisions of the law that make it illegal to distribute and possess with intent to distribute controlled substances. Therefore, the first question to you is:  Did the alleged conspiracy exist?

*Second*, the defendant you are considering knowingly and willfully became a member of the charged conspiracy; that is, he knowingly associated himself with the conspiracy and participated in it.

I will now explain each of these elements.

### i.    Element One: Existence of the Conspiracy

### a.    Agreement

The first element the government must prove beyond a reasonable doubt is that the conspiracy actually existed, that is, that two or more persons knowingly and willfully entered into the unlawful agreement charged in the Indictment.  The conspiracy alleged in the Indictment is an agreement to distribute controlled substances, or to possess controlled substances with the intent to distribute them.

What is a conspiracy?  A conspiracy is a combination or agreement of two or more persons to join together to violate the law.  The crime of conspiracy to violate a federal law is a separate and distinct offense from the crime of actually violating that law, which is referred to as a "substantive offense."  Count Three, on which I just gave you instructions, charges a substantive offense, for instance.  The ultimate success of the conspiracy, or the actual commission of the substantive offense that is the object of the conspiracy, is not relevant to the question of whether the conspiracy existed.  In other words, the defendant's guilt does not depend on the ultimate success of the conspiracy.  You may find the defendant guilty of agreeing to distribute or agreeing to possess with intent to distribute drugs even if the conspiracy was not successful and no drugs were actually possessed or distributed.  It is the agreement itself—the agreement with others to commit the crime—along with the other elements of conspiracy that the law forbids and defines as a crime.

For the government to satisfy this element, you need not find that the alleged members of the conspiracy sat around together and entered into any express or formal agreement.  Similarly, you need not find that the alleged conspirators stated, in words or writing, what the scheme was, its object or purpose, or every precise detail of the scheme or the means by which its object or

20

purpose was to be accomplished. What the government must prove is that there was a mutual understanding, either spoken or unspoken, between the defendant and at least one other person to cooperate with each other to accomplish an unlawful act.

Nor is the government required to prove the specific identity of any individual co-conspirator. You need only find that the defendant agreed with at least one other person to violate the law. That person or those persons may be known and identified or unknown and unidentified.

You may, of course, find that the existence of an agreement to commit an unlawful act has been established by direct proof. However, common sense tells you that when people enter into a criminal conspiracy, much is left to unexpressed understanding. Conspiracy by its very nature is characterized by secrecy. It is, therefore, rare that a conspiracy can be proven by direct evidence of an explicit agreement.

The agreement may be implicit. It is sufficient if two or more persons in some way or manner, impliedly or tacitly, come to a common understanding to violate the law. In determining whether there has been an unlawful agreement, you may consider acts and conduct of the alleged co-conspirators that were done to carry out an apparent criminal purpose. The adage "actions speak louder than words" is applicable here. Sometimes the only evidence that is available with respect to the existence of a conspiracy is that of disconnected acts and conduct on the part of the individual conspirators, when taken together and considered as a whole. Different conspirators may undertake different acts at different times. However, these acts or conduct may warrant the inference that a conspiracy existed.

So first you must determine whether or not the proof established beyond a reasonable doubt the existence of the conspiracy charged. In considering the first element, you should consider all of the evidence that has been admitted with respect to the conduct and statements of each alleged

21

co-conspirator, which may include not only the defendants, but other alleged co-conspirators as well, and such inferences as reasonably may be drawn from the evidence.

### b. Object of the Conspiracy

To prove the first element of the conspiracy charged, the government must also show that there was an unlawful object or goal of the conspiracy. The object of a conspiracy is the illegal goal the co-conspirators agree or hope to achieve. Count Two charges that the object of the conspiracy was the distribution of or possession with intent to distribute controlled substances, specifically, para-fluorofentanyl, fentanyl, methamphetamine, heroin, and/or cocaine.

As I previously explained, because a conspiracy is a separate and distinct crime from the substantive offense itself, to find the defendants guilty of the conspiracy charged in Count Two, it is not necessary for you to find that the distribution of and possession with intent to distribute these controlled substances actually occurred. In other words, the government is not required to show that the conspiracy was successful. However, to help you understand the nature of the unlawful object of the conspiracy charged in Count Two, I am going to reiterate the elements of the crime of distribution and possession with intent to distribute controlled substances, although Count Two involves some additional controlled substances that were not part of Count Three.

The elements of distribution and possession with intent to distribute controlled substances are:

*First*, a person distributed, or possessed with the intent to distribute, a mixture or substance containing a controlled substance;

*Second*, that person did so knowingly and intentionally; and

*Third*, for purposes of Count Two, the controlled substance was para-fluorofentanyl, fentanyl, methamphetamine, heroin, or cocaine.

22

I instruct you that para-fluorofentanyl, fentanyl, methamphetamine, heroin, and cocaine are controlled substances under federal law. The government need not prove that the conspiracy involved all five of para-fluorofentanyl, fentanyl, methamphetamine, heroin, and cocaine. You also do not need to make a determination as to the quantity of the controlled substance involved at this time. I will address drug quantity shortly, but for now, you need only find whether the government has proved beyond a reasonable doubt that a conspiracy existed to distribute, or possess with the intent to distribute, some amount of a controlled substance, and that at least one of the controlled substances was para-fluorofentanyl, fentanyl, methamphetamine, heroin, or cocaine or some combination of those substances.

The government also must prove beyond a reasonable doubt only that the defendant you are considering conspired to distribute a controlled substance *or* that he conspired to possess a controlled substance with the intent to distribute it. The government need not prove both. But if you find that only one has been proven, you must be unanimous as to which one. That is, to find the defendant guilty of the crime of conspiracy, you need to find beyond a reasonable doubt that the defendant agreed with at least one other person to distribute a controlled substance, *or* to possess with the intent to distribute a controlled substance, *or* to do both of these thing. In this regard, it is not necessary that the defendant specifically agreed to distribute para-fluorofentanyl, fentanyl, methamphetamine, heroin, or cocaine to be guilty; rather, the defendant is guilty so long as he agreed to distribute any controlled substance, or to possess with the intent to distribute any controlled substance, or both of those things.

I defined the terms "distribution," "possession," and "with intent to distribute" when I instructed you on Count Three, and I instruct you to apply the same definitions for those terms here.

23

Finally, while the Indictment charges that the conspiracy existed from between at least in or about April 2022 and at least in or about September 2024, it is not necessary that the government prove that the conspiracy started and ended on any specific dates or lasted for that entire period. Rather, the first element is satisfied if the government proves beyond a reasonable doubt that, in fact, a conspiracy existed at least at any time between April 2022 and September 2024, regardless of when it was formed.

### ii.    Element Two: Knowingly and Willfully Becoming a Member

I have just finished instructing you as to the first element of Count Two, that is, that the conspiracy charged in Count Two existed.  If you conclude that the government has proved beyond a reasonable doubt that the conspiracy charged in Count Two existed, and that the conspiracy had as its object at least one of the unlawful purposes charged in the Indictment—that is, the distribution of, or the possession with intent to distribute, controlled substances, specifically, para-fluorofentanyl, fentanyl, methamphetamine, heroin, and/or cocaine—then you must next determine whether each defendant participated in the conspiracy with knowledge, and in furtherance, of its unlawful objective or objectives.

Specifically, the government must prove beyond a reasonable doubt that each defendant knowingly and willfully entered into the conspiracy charged in Count Two and that he agreed to take part in the conspiracy to promote and cooperate in one of its unlawful objectives.

As you can see, this element concerns a person's state of mind.  Direct proof of state of mind is not always available.  Indeed, it would be a rare case where it could be shown that a person wrote or stated that, as of a given time in the past, he committed an act with a certain state of mind. Such direct proof is not required.

24

### a. Count Two:   "Unlawful," "Willfully," "Knowingly," and "Intentionally," Defined

I have already defined for you the term "knowingly" and "intentionally."  I will now define two more terms that I have used: "unlawful" and "willfully."

#### "Unlawful"

"Unlawful" means contrary to law.  But in terms of its application to a defendant's state of mind, the government is not required to show that the defendant knew that he was breaking any particular law.  The government must prove, however, that the defendant was aware that the purpose of the conspiracy was generally unlawful in nature.

#### "Willfully "

A person acts "willfully" if he acts purposely and voluntarily and with the intent to do something unlawful.  Thus, a defendant enters into a conspiracy "knowingly" and "willfully" if he joins and participates in the conspiracy with knowledge of, and the intent to further, its unlawful object.

### b. Count Two:  Duration and Extent of Participation in Conspiracy

The duration and extent of a defendant's participation in the conspiracy have no bearing on the issue of that defendant's guilt.  The defendant may have joined the conspiracy at any time in its progress, and the defendant will be held responsible for all that was done before he joined and all that was done during the conspiracy's existence while he was a member.  Each member of a conspiracy may perform separate and distinct acts.  Some conspirators play major roles, while others play minor roles in the scheme.  An equal role is not what the law requires.  In fact, even a single act may be sufficient to draw a defendant within the scope of the conspiracy.

When you come to decide, for example, whether the defendant agreed with at least one other person to possess controlled substances with an intent to distribute or to distribute controlled

25

substances, you may consider what the defendant said, what he did, and what others did in relation to him and, in general, everything that occurred. The ultimate facts of knowledge and criminal intent may be established by circumstantial evidence, based upon a person's outward manifestations, his words, his conduct, his acts, and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn therefrom.

Moreover, when people enter into a conspiracy to accomplish an unlawful end, they become agents or partners of one another in carrying out the conspiracy. Accordingly, the reasonably foreseeable acts, declarations, statements and omissions of any member of the conspiracy and in furtherance of the common purpose of the conspiracy are deemed under the law to be the acts of all of the members and all of the members are responsible for such acts, declarations, statements, and omissions. In other words, if you find beyond a reasonable doubt that the defendant you are considering was a member of the conspiracy charged in the Indictment, then any acts done or statements made in furtherance of the conspiracy by persons also found by you to have been members of that same conspiracy may be considered against the defendant. This is so even if such acts were done and statements were made in the defendant's absence and without his knowledge.

In sum, the government must prove beyond a reasonable doubt that the defendant—with an understanding of the unlawful character of the conspiracy—knowingly and intentionally engaged, advised, or assisted in the conspiracy for the purpose of committing or furthering the unlawful objective of distributing or possessing with the intent to distribute one or more controlled substances, thereby becoming a knowing and willing participant in the unlawful agreement—that is to say, that he became a conspirator.

26

Once a conspiracy is formed, it is presumed to continue until either its objective is accomplished or there is some affirmative act or termination by its members. So too, once a person is found to be a member of a conspiracy, he is presumed to continue as a member in the conspiracy until a conspiracy is terminated or achieves its objective, unless it is shown by some affirmative proof that the person withdrew and disassociated himself from the conspiracy.

It is for you to determine whether the government has proved beyond a reasonable doubt that the defendant you are considering knowingly and willfully participated in the charged conspiracy. However, it is not necessary for the government to show that the defendant was fully informed as to all the details of the conspiracy in order for you to infer knowledge and intent on the part of the defendant. Similarly, it is not necessary for the defendant to have known every other member of the conspiracy or their activities within the conspiracy. In fact, a defendant may know only one other member of a conspiracy and may still be considered a co-conspirator. Nor is it necessary for the defendant to have received any monetary benefit from his participation in, or have a financial stake in the outcome of, the conspiracy. It is enough if the defendant participated in the conspiracy knowingly and willfully as I have defined those terms.

I also want to caution you that a person's mere association with a member of a conspiracy does not make that person a member of the conspiracy, even when a person's association with a member of a conspiracy is coupled with knowledge that a conspiracy is taking place. Mere presence at the scene of a crime, even coupled with knowledge that a crime is taking place, is not sufficient to support a conviction. In other words, knowledge without participation is not sufficient. What is necessary is that the defendant joined in the conspiracy with knowledge and an intent to aid in the accomplishment of its unlawful purpose.

27

### 2.    Count Two:  Drug Type and Quantity

If, and only if, you find that the government has proved beyond a reasonable doubt that either defendant is guilty of participating in the conspiracy charged in Count Two, then you are asked to make a finding as to the type and quantity of the controlled substance or controlled substances.

You do not need to determine the precise quantity of any controlled substance involved in the conspiracy.  Rather, you need only decide whether the conspiracy involved more than certain specified amounts of each controlled substance and whether the amounts were known to the defendant and within the scope of the criminal activity that he jointly undertook.  The purity of the controlled substance is not important to your determination of the defendants' guilt or non-guilt. The burden is on the government to establish the type and quantity of drugs beyond a reasonable doubt.

*First*, you must determine whether the government has proved beyond a reasonable doubt that the conspiracy involved mixtures and substances containing a detectable amount of para-fluorofentanyl.  If you find that it has, the specified amounts are 100 grams or more, at least 10 grams but less than 100 grams, or less than 10 grams of mixtures and substances containing a detectable amount of para-fluorofentanyl.

*Second*, you must determine whether the government has proved beyond a reasonable doubt that the conspiracy involved mixtures and substances containing a detectable amount of fentanyl.  If you find that it has, the specified amounts are 400 grams or more, at least 40 grams but less than 400 grams, or less than 40 grams of mixtures and substances containing a detectable amount of fentanyl.

*Third*, you must determine whether the government has proved beyond a reasonable doubt that the conspiracy involved mixtures and substances containing a detectable amount of methamphetamine.  If you find that it has, the specified amounts are 500 grams or more, at least 50 grams but less than 500 grams, or less than 50 grams of mixtures and substances containing a detectable amount of methamphetamine.

*Fourth*, you must determine whether the government has proved beyond a reasonable doubt that the conspiracy involved mixtures and substances containing a detectable amount of heroin.  If you find that the conspiracy did, the specified amounts are 1 kilogram or more, at least 100 grams but less than 1 kilogram, or less than 100 grams of mixtures and substances containing a detectable amount of heroin.

*Fifth*, you must determine whether the government has proved beyond a reasonable doubt that the conspiracy involved mixtures and substances containing a detectable amount of cocaine.  If you find that the conspiracy did, the specified amounts are 500 grams or more or less than 500 grams of mixtures and substances containing a detectable amount of cocaine.

You will record the jury's answer to these questions on the verdict sheet that I will give you.

Your finding on quantity must be unanimous in the sense that you must all agree that the charged conspiracy involved the type of controlled substance and at least the quantity you indicate and you must make that finding beyond a reasonable doubt.  For example, if you all agree that the charged conspiracy involved 400 grams or more of mixtures or substances containing a detectable amount of fentanyl, you should indicate 400 grams or more of fentanyl.  If, by contrast, you all agree that the charged conspiracy involved less than 400 grams but at least 40 grams of mixtures or substances containing a detectable among of fentanyl, you should indicate 40 grams or more of

29

fentanyl. If, by contrast, you all agree that the charged conspiracy involved less than 40 grams of mixtures or substances containing a detectable amount of fentanyl, you should indicate less than 40 grams of fentanyl.

However, if some jurors conclude that the charged conspiracy involved 40 grams or more of mixtures or substances containing a detectable amount of fentanyl, and the rest of the jurors conclude that it involved less than 40 grams of fentanyl, you may not indicate that the conspiracy involved 40 grams or more of fentanyl. Under those circumstances, you should indicate less than 40 grams of mixtures or substances containing a detectable amount of fentanyl, because all of you would be in agreement that the conspiracy involved at least some amount less than 40 grams of fentanyl.

In calculating these amounts, you should include (1) any distribution or possession with intent to distribute in furtherance of the conspiracy in which the defendant personally participated and (2) any distribution or possession with intent to distribute in furtherance of the conspiracy that the defendant reasonably foresaw even though he did not participate. "Reasonably foreseeable" means that the defendant could have reasonably anticipated the type and quantity of drugs involved in the conspiracy. With respect to any act or acts in which the defendant was personally involved, you do not need to find that he knew what type of drugs were involved or that he knew the exact quantity of drugs that were involved; he only had to know that the substances involved in the offense were controlled substances.

 You will record the jury's answer to these questions on the verdict sheet.

### 3.  Count Two:  Use Resulting in Death

If, and only if, you find that the government has proved beyond a reasonable doubt that either defendant is guilty of Count Two, then you must make a finding as to whether the

government has also proved beyond a reasonable doubt that the death of Holly Holderbaum resulted from the use of para-fluorofentanyl and/or fentanyl that was distributed by, or possessed with intent to distribute by, members of the conspiracy that the defendant agreed to join.

I instructed you on what it means for death to "result from" the use of a controlled substance when I instructed you on Count Three. You must apply those same instructions here.

You will record the jury's answer to this question on the verdict sheet that I give you.

### E.    Count One: Continuing Criminal Enterprise

Count One charges Mr. Lopez Reyes with engaging in a continuing criminal enterprise, or "CCE," in violation of Title 21, United States Code, Section 848. Count One charges:

> From at least in or about April 2022, up to and including September 2024, in the Southern District of New York, the Dominican Republic, India, and elsewhere, FRANCISCO ALBERTO LOPEZ REYES, the defendant, and others known and unknown, engaged in a continuing criminal enterprise (the "Continuing Criminal Enterprise"), in that LOPEZ REYES knowingly and intentionally participated in a continuing series of violations of Title 21, United States Code, Chapter 13, Subchapters I and II, including, among others, Violations One through Seven set forth below, undertaken by LOPEZ REYES in concert with five and more persons with respect to whom LOPEZ REYES occupied a position of organizer, supervisor, and any position of management, and from which such continuing violations LOPEZ REYES obtained substantial income and resources.
>
> Furthermore, FRANCISCO ALBERT LOPEZ REYES, the defendant, was the principal administrator, organizer, and leader of the Continuing Criminal Enterprise, which involved at least 300 times the quantity of mixtures and substances containing a detectable amount of (i) para-fluorofentanyl, an analogue of fentanyl, (ii) fentanyl, and (iii) methamphetamine, its salts, isomers, and salts of its isomers, as described in Title 21, United States Code, Section 841(b)(1)(B).

#### 1.  Count One:  Elements of the Offense

To satisfy its burden of proof with respect to Count One, the government must prove beyond a reasonable doubt the following elements:

*First*, Mr. Lopez Reyes committed a federal narcotics felony;

31

*Second*, that offense was part of a series of three or more violations of the federal narcotics laws committed by Mr. Lopez Reyes;

*Third*, Mr. Lopez Reyes committed the offenses in this series of violations in concert with five or more persons;

*Fourth*, with respect to these five or more persons, Mr. Lopez Reyes acted as an organizer, supervisor, or manager; and

*Fifth*, Mr. Lopez Reyes obtained substantial income or resources from the series of violations of the narcotics laws.

### i.    Element One: Commission of a Federal Narcotics Felony Offense

The first element the government must prove beyond a reasonable doubt is that Mr. Lopez Reyes committed a felony violation of the federal narcotics laws.  Specifically, the government must prove beyond a reasonable doubt that he conspired to distribute a controlled substance; distributed or possessed with intent to distribute a controlled substance; or aided and abetted the distribution or possession with intent to distribute of a controlled substance.  Therefore, if you find that the government has proved beyond a reasonable doubt that Mr. Lopez Reyes committed any of the violations that I will describe in moment as part of the continuing series of violations required by Element Two, then you must find that Element One is satisfied.  I instruct you that each of the seven violations is a federal narcotics felony.

### ii.    Element Two: Continuing Series of Violations

The second element the government must prove beyond a reasonable doubt is that the defendant committed the federal narcotics felony that satisfied the first element as part of a continuing series of violations of the federal narcotics laws. A continuing series of violations

32

means three or more violations of the federal narcotics laws committed over a definite period of time and related to each other in some way, as distinguished from isolated or disconnected acts.

Here, the Government has alleged seven violations of the federal narcotics laws:

*First,* that from at least in or about April 2022 to at least in or about September 2024, in the Southern District of New York and elsewhere, Mr. Lopez Reyes conspired to distribute and/or possess with intent to distribute controlled substances—specifically, (i) 100 grams and more of mixtures and substances containing a detectable amount of para-fluorofentanyl; (ii) 400 grams and more of mixtures and substances containing a detectable amount of fentanyl; (iii) 500 grams and more of mixtures and substances containing a detectable amount of methamphetamine; (iv) one kilogram and more of mixtures and substances containing a detectable amount of heroin; and/or (v) 500 grams and more of mixtures and substances containing a detectable amount of cocaine.

*Second*, that on or about May 31, 2023, in the Southern District of New York and elsewhere, Mr. Lopez Reyes knowingly and intentionally distributed or possessed with intent to distribute controlled substances—specifically, (i) 100 grams and more of mixtures and substances containing a detectable amount of para-fluorofentanyl; (ii) 400 grams and more of mixtures and substances containing a detectable amount of fentanyl; (iii) 500 grams and more of mixtures and substances containing a detectable amount of methamphetamine; (iv) 100 grams and more of mixtures and substances containing a detectable amount of heroin; and/or (v) 500 grams and more of mixtures and substances containing a detectable amount of cocaine, and aided and abetted the same.

*Third*, that on or about October 5, 2023, in the Southern District of New York and elsewhere, Mr. Lopez Reyes knowingly and intentionally distributed or possessed with intent to distribute controlled substances—specifically, (i) 100 grams and more of mixtures and substances

33

containing a detectable amount of para-fluorofentanyl; (ii) 400 grams and more of mixtures and substances containing a detectable amount of fentanyl; (iii) 500 grams and more of mixtures and substances containing a detectable amount of methamphetamine; and/or (iv) one kilogram and more of mixtures and substances containing a detectable amount of heroin, and aided and abetted the same.

*Fourth*, that on or about December 4, 2023, in the Southern District of New York and elsewhere, Mr. Lopez Reyes knowingly and intentionally distributed or possessed with intent to distribute controlled substances—specifically, (i) 100 grams and more of mixtures and substances containing a detectable amount of para-fluorofentanyl and/or (ii) 500 grams and more of mixtures and substances containing a detectable amount of methamphetamine, and aided and abetted the same.

*Fifth*, that on or about February 16, 2024, in the Southern District of New York and elsewhere, Mr. Lopez Reyes knowingly and intentionally distributed or possessed with intent to distribute controlled substances—specifically, (i) mixtures and substances containing a detectable amount of fentanyl and/or (ii) mixtures and substances containing a detectable amount of para-fluorofentanyl, and aided and abetted the same.

*Sixth*, that on or about February 26, 2024, in the Southern District of New York and elsewhere, Mr. Lopez Reyes knowingly and intentionally distributed or possessed with intent to distribute controlled substances—specifically, (i) 100 grams and more of mixtures and substances containing a detectable amount of para-fluorofentanyl; (ii) 400 grams and more of mixtures and substances containing a detectable amount of fentanyl; and/or (iii) 500 grams and more of mixtures and substances containing a detectable amount of methamphetamine, and aided and abetted the same.

34

*Seventh*, that on or about April 6, 2024, in the Southern District of New York and elsewhere, Mr. Lopez Reyes knowingly and intentionally distributed or possessed with intent to distribute controlled substances—specifically, (i) 100 grams and more of mixtures and substances containing a detectable amount of para-fluorofentanyl, an analogue of fentanyl; (ii) 400 grams and more of mixtures and substances containing a detectable amount of fentanyl; and/or (iii) 500 grams and more of mixtures and substances containing a detectable amount of methamphetamine, and aided and abetted the same.

As you heard, Violation One alleges that Mr. Lopez Reyes conspired to distribute controlled substances. I instruct you that the elements of Violation One are the same as the elements for the offense charged in Count Two, and you must apply them here. Violations Two through Seven are six occasions on which the government alleges that Mr. Lopez Reyes distributed or possessed with intent to distribute controlled substances, or aided and abetted the same. I instruct you that the elements of Violation Two through Seven are the same as the elements for the offense charged in Count Three, and you must apply them here.

In order to find Mr. Lopez Reyes guilty of Count One, you must unanimously agree beyond a reasonable doubt on which three or more individual specific acts constitute the continuing series of violations. One of them must be the felony narcotics offense that satisfied the first element of this count. I must emphasize that if you do find beyond a reasonable doubt that Mr. Lopez Reyes committed a continuing series of drug crimes as claimed by the government, you must unanimously agree among yourselves on at least three of the acts in the series in order to find that the second element of Count One is established. In short, it cannot be the case that some of you agree as to some, others of you agree as to others. You must all unanimously agree beyond a

35

reasonable doubt as to three or more related narcotics offenses before you can find Mr. Lopez Reyes guilty of Count One.

### iii.     Element Three: Five or More Persons

The third element the government must prove beyond a reasonable doubt is that Mr. Lopez Reyes committed a continuing series of violations in concert with five or more persons. These persons do not have to be named in the Indictment. They could be anyone who you find, beyond a reasonable doubt, were persons with whom the defendant committed the violations. However, you must unanimously agree on at least five people the defendant committed the violations with. It is not necessary that you identify each of these five individuals by their first and last names, but they must be, in fact, five separate persons.

You do not have to find that the five or more persons acted together at the same time, or that the defendant personally dealt with them together. As long as there were at least five persons whom the defendant somehow committed the continuing series of violations along with, that is sufficient.

### iv.     Element Four: Organizer, Supervisor, or Manager

The fourth element the government must prove beyond a reasonable doubt is that Mr. Lopez Reyes occupied a position of organizer, supervisor, or manager with respect to the five or more persons he acted in concert with.

In considering whether the defendant occupied such a position, you should give the words "organizer, supervisor, or manager" their ordinary, everyday meaning. An enterprise may have more than one organizer, supervisor, or manager, and the defendant need not have been the dominant organizer or manager.

To satisfy this element, it would be sufficient, for example, if the defendant arranged the separate activities of five or more other persons into one essentially orderly operation or enterprise, or if the defendant gave orders or directions to five other persons who carried them out, or if the defendant exerted some type of influence over five other persons as shown by their compliance with his directions, instructions, or terms.

The government need not prove that the defendant exercised the same kind of control over each of the five persons, or that the same type of subordinate relationship existed between the defendant and each of the five. Nor is any particular type of organizational, supervisory, or managerial role required. For example, the defendant is not required to have had direct, personal contact with each of the persons he organized, supervised or managed. Nor are those persons required to have been salaried employees of the defendant or otherwise akin to paid workers.

In considering this element, you should consider evidence that might distinguish the defendant's position from that of an underling in the enterprise. Did he have greater control over the enterprise than others? Did he set rules that others had to follow? Did others treat him as their leader or boss? Did others depend on him for the income they made from the enterprise? These inquiries are not conclusive, nor are they exhaustive. They are simply the kinds of questions you should ask yourselves in thinking about the defendant's role in these activities and his relationship with the other persons involved in them.

### v.    Element Five: Substantial Income or Resources

The final element the government must prove beyond a reasonable doubt is that Mr. Lopez Reyes derived substantial income or resources from the continuing series of federal narcotics violations. The law does not prescribe the minimum amount of money required to constitute substantial income, but this element excludes trivial amounts derived from occasional narcotics

37

sales.  If you determine that Mr. Lopez Reyes did not receive more than small sums of money or other insignificant gain from drug-related activity, you must find him not guilty of Count One.

In determining whether the defendant's income has been substantial, you may consider both direct and circumstantial evidence, such as the volume of narcotics involved, the amount of money changing hands, his gross income if any from these violations, and the net profits if any he actually realized from them.  Keep in mind, however, that the government must prove that the defendant actually obtained substantial income or resources from his narcotics activities and that, as with all other elements of the offense, the government must prove this element of the offense beyond a reasonable doubt.

### 2.  Count One:  Additional Findings

If, and only if, you find that the government has proved beyond a reasonable doubt that Mr. Lopez Reyes is guilty of the offense charged in Count One, then you are asked to make two additional findings.  You must be unanimous as to each.  They are:

*First*, you must determine whether the government proved beyond a reasonable doubt that Mr. Lopez Reyes was the *principal* administrator, organizer, or leader of the continuing criminal enterprise, or one of several principal administrators, organizers, or leaders.  I instruct you that the government does not need to prove that the defendant was the sole principal administrator, organizer, or leader of the continuing criminal enterprise.  An enterprise may have more than one principal administrator, organizer, or leader.  You should give the terms "principal administrator, organizer, or leader" their everyday meaning as you would in a public or business community.

*Second*, if and only if you unanimously answer yes to the previous question, you must determine whether the government proved beyond a reasonable doubt that any one of the three or more violations you identified as part of the continuing series of violations involved at least three

38

kilograms of mixtures or substances containing detectable amounts of para-fluorofentanyl, at least

twelve kilograms of mixtures or substances containing detectable amounts of fentanyl, or at least

fifteen kilograms of mixtures or substances containing detectable amounts of methamphetamine.

In other words, you need to find whether those quantities of para-fluorofentanyl, fentanyl, or

methamphetamine, respectively, were present in any of the violations you identified as part of the

continuing series of violations.

You will record the jury's answer to this question on the verdict sheet that I give you.

### F.    Count Four: Conspiracy to Commit Money Laundering

Count Four charges Mr. Lopez Reyes with participating in a conspiracy to commit money

laundering from approximately May 2022 through approximately February 2024.  The Indictment

charges:

> From at least in or about May 2022 through at least in or about February 2024, in the
> Southern District of New York and elsewhere, FRANCISCO ALBERTO LOPEZ REYES,
> the defendant, and others known and unknown, willfully and knowingly combined,
> conspired, confederated, and agreed together and with each other to commit money
> laundering, in violation of Title 18, United States Code, Sections 1956(a)(l)(B)(i) and
> (a)(2)(B)(i).
>
> It was a part and an object of the conspiracy that FRANCISCO ALBERTO LOPEZ
> REYES, the defendant, and others known and unknown, knowing that the property
> involved in a financial transaction represented the proceeds of some form of unlawful
> activity, would and did conduct and attempt to conduct such a financial transaction, which
> transaction affected interstate and foreign commerce and involved the use of a financial
> institution which was engaged in, and the activities of which affected, interstate and foreign
> commerce, and which in fact involved the proceeds of specified unlawful activity, to wit,
> felonious narcotics offenses, in violation of Title 21, United States Code, Section 841,
> knowing that the transaction was designed in whole and in part to conceal and disguise the
> nature, the location, the source, the ownership, and the control of the proceeds of specified
> unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(l)(B)(i).
>
> It was further a part and an object of the conspiracy that FRANCISCO ALBERTO LOPEZ
> REYES, the defendant, and others known and unknown, would and did transport, transmit,
> and transfer, and attempt to transport, transmit, and transfer, a monetary instrument and
> funds from a place in the United States to and through a place outside the United States,
> and to a place in the United States from and through a place outside the United States,

39

knowing that the monetary instrument and funds represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, to wit, felonious narcotics offenses, in violation of Title 21, United States Code, Section 841, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

## 1.  Count Four:  Elements of the Offense

To prove Count Four, the government must prove beyond a reasonable doubt the following two elements:

*First*, the existence of the conspiracy charged in Count Four of the Indictment; that is, that there was an agreement or understanding between two or more people to violate the provisions of the law that make it illegal to commit money laundering.  Therefore, the first question to you is: Did the alleged conspiracy exist?

*Second*, Mr. Lopez Reyes knowingly and willfully became a member of the charged conspiracy; that is, he knowingly associated himself with the conspiracy and participated in the conspiracy.

Except for certain differences I will explain to you right now, you should follow the instructions I have previously given you about the law of conspiracy in connection with Count Two.

### i.    Element One: Existence of the Conspiracy

#### a.  Agreement

I gave you instructions when discussing Count Two about what is necessary to prove the existence of an agreement to commit an unlawful act.  You should apply those instructions here.

### b.  Object of the Conspiracy

However, the conspiracy charged in Count Four has a different object from that of the conspiracy charged in Count Two.  The object of Count Four's conspiracy is money laundering. The federal money laundering statute can be violated in different ways.  The Indictment charges two of those ways, each of which is a separate object of the charged conspiracy.

The first object the government alleges is a violation of the money laundering statute by engaging in domestic concealment—that is, participating in a domestic financial transaction that involves the proceeds of a specified unlawful activity, knowing that the transaction was designed to conceal or disguise the nature, location, source, ownership or control of the proceeds of a specific unlawful activity.

The second object the government alleges is a separate violation of the money laundering statute by engaging in international concealment—that is, participating in a foreign financial transaction that involves the proceeds of a specified unlawful activity, knowing that the transaction was designed to conceal or disguise the nature, location, source, ownership or control of the proceeds of a specified unlawful activity.

It is not necessary for you to find that the charged conspiracy embodied both of these unlawful objectives.  It is sufficient if you find unanimously that the government has proved beyond a reasonable doubt that the conspirators agreed, expressly or impliedly, on either one of these two objectives.

I will now go over the elements of each of these two money laundering violations.

### 1.  Object – Domestic Concealment – Elements

The substantive crime of domestic concealment money laundering has three elements.

41

Element One – Domestic Concealment

The first element of domestic concealment money laundering is that a person conducted or attempted to conduct a financial transaction involving property constituting the proceeds of specified unlawful activity, here, the distribution of, or possession with intent to distribute, controlled substances.  A number of these terms require definition.

The term "conducted" includes initiating, concluding, or participating in initiating or concluding a transaction.

The term "financial transaction" means a transaction involving a financial institution that is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree, or a transaction that in any way or degree affects interstate or foreign commerce and involves the movement of funds by wire or other means, or involves one or more monetary instruments.

A "transaction involving a financial institution" includes a deposit, withdrawal, transfer between accounts, exchange of currency, loan, extension of credit, purchase of sale of any stock, bond, certificate of deposit, or other monetary instrument, use of a safe deposit box, or any other payment, transfer, or delivery by, through, or to a financial institution by whatever means.

The term "interstate or foreign commerce" means commerce between any combination of states, territories or possessions of the United States, or between the United States and a foreign country.  In determining whether someone is engaged in, or whether his activities affect, interstate or foreign commerce, the involvement in interstate or foreign commerce can be minimal.  Any involvement at all will satisfy this element.

The term "monetary instrument" includes, among other things, coin or currency of the United States or any other country, personal checks, traveler's checks, cashier's checks, bank

42

checks, money orders, and investment securities or negotiable instruments in bearer form or otherwise in such form that title thereto passes upon delivery.

The term "proceeds" means any property derived, directly or indirectly, from some form of unlawful activity, including the gross receipts of such activity. Proceeds can be any kind of property, not just money.

The term "specified unlawful activity" means any one of a variety of offenses defined by statute. In this case, the government has alleged that the funds in question were the proceeds of the sale and distribution of controlled substances in violation of Title 21, U.S. Code, Section 841. I instruct you that, as a matter of law, the distribution or the possession with the intent to distribute of controlled substances falls within the definition of "specified unlawful activity." However, it is for you to determine whether the funds that were the subject of the financial transaction conducted by members of the conspiracy were in fact the proceeds of that specified unlawful activity. I previously instructed you on the elements of distribution and possession with the intent to distribute of a controlled substance for purposes of Count Three, and I instruct you to apply those same elements here.

<u>Element Two – Domestic Concealment</u>

The second element of a domestic concealment theory of money laundering is that a person who agreed to conduct the transaction knew that the property involved in the financial transaction represented proceeds from some form, though not necessarily a specific form, of activity that constitutes a felony under state, federal, or foreign law. But the government does not need to prove that the person knew that the property involved in the transaction represented the proceeds of the distribution or possession with the intent to distribute controlled substances, or any other specific offense. The government only has to prove that the person knew it represented the proceeds of

43

some illegal activity which happened to be a felony.  I instruct you as a matter of law that the distribution of and possession with the intent to distribute controlled substances are both felonies under federal law.

Element Three – Domestic Concealment

The third element of a domestic concealment theory of money laundering concerns the purpose of the transaction.  The government must prove that the person who agreed to transport the property involved in the transaction acted with knowledge that the transaction would be designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the specified illegal activity.  Proof only that the funds were concealed is not sufficient to satisfy this element.  Instead, the government must prove that the purpose of the transfer was to conceal or disguise the nature, location, source, ownership, or control of the proceeds and that the person knew that this was a purpose of the transfer.  Therefore, if the government proves that the person knew that a transaction was designed, at least in part, to conceal or to disguise the true nature, location, source, ownership or control of the property in question, this element is satisfied. However, if the person knew about the transaction, but did not know that it was designed, at least in part, either to conceal or disguise the true nature, location, source, ownership or control of the property, then this element is not satisfied.

2. **Object – International Concealment – Elements**

The second alleged object of the conspiracy charged in Count Four is international concealment.  The substantive crime of international concealment money laundering has three elements.

44

Element One – International Concealment

The first element of international concealment is that a person transported or attempted to transport a monetary instrument or funds from a place in the United States to or through a place outside the United States, or to a place in the United States from or through a place outside the United States.

The term "monetary instrument" has the same meaning as in the context of domestic concealment.

The term "funds" refers to money or negotiable paper that can be converted into currency.

"Transportation" has its ordinary, everyday meaning. The government need not prove that the defendant physically carried the funds or monetary instrument in order to prove that he is responsible for transporting it. All that is required is proof that the defendant caused the funds or monetary instrument to be transported.

On this element, the government is required to prove either that the funds or monetary instrument would be transported from somewhere in the United States to or through someplace outside the United States, *or* that the funds or monetary instrument would be transported to someplace in the United States from or through someplace outside the United States. The government need not prove that the offense involved both, but you must be unanimous as to whether the government has proved either.

Elements Two and Three – International Concealment

The second and third elements of international concealment money laundering are the same as the second and third elements of domestic concealment money laundering. I instruct you to apply the same elements here.

45

As I mentioned, you must unanimously agree as to which object—domestic concealment, international concealment, or both—the government has proved beyond a reasonable doubt.

### ii.    Element Two: Knowingly and Willfully Becoming a Member

I have just finished instructing you as to the first element of Count Four, that is, that the money laundering conspiracy charged in Count Four existed.  If you conclude unanimously that the government has proved beyond a reasonable doubt that the conspiracy charged in Count Four existed, including that the conspiracy had as its object at least one of the unlawful purposes charged in the Indictment—that is, domestic concealment money laundering or international concealment money laundering—then you must next determine whether Mr. Lopez Reyes participated in the conspiracy with knowledge, and in furtherance, of its unlawful objective or objectives.

Specifically, the government must prove beyond a reasonable doubt that Mr. Lopez Reyes knowingly and willfully entered into the conspiracy charged in Count Four and that he agreed to take part in the conspiracy to promote and cooperate in one of its unlawful objectives.

The instructions for this element are the same as those I gave you when explaining the second element of Count Two, and you should apply them here.

### G.    Venue

With respect to each count in the Indictment, the government, in addition to proving beyond a reasonable doubt the essential elements of that charge, must also prove that at least one act in furtherance of the charge occurred in the Southern District of New York.  This is called establishing venue.

The Southern District of New York includes all of Manhattan and the Bronx, as well as Westchester, Rockland, Putnam, Dutchess, Orange, and Sullivan Counties.

46

The government does not have to prove that the completed crime was committed within the Southern District of New York, or that the defendant was ever in the Southern District of New York. It is sufficient to satisfy the venue requirement if any act in furtherance of the crime charged occurred in this District. The act itself need not be a criminal act. And the act need not have been taken by the defendant, so long as the act was part of the charged offense that you find the defendant committed.

Unlike the elements of the offenses which must be proven beyond a reasonable doubt, the government is only required to prove venue by a preponderance of the evidence. A preponderance of the evidence means that it is more probable than not that some act in furtherance of the crime you are considering occurred in this District.

If you find that the government has failed to prove venue for a count, then you must find the defendant not guilty of that count.

## H.    Motive

Proof of motive is not a necessary element of any of the crimes with which the defendant is charged. Proof of motive does not establish guilt, nor does the lack of proof of motive establish that the defendant is not guilty. If the guilt of a defendant is shown beyond a reasonable doubt, it is immaterial what that defendant's motive for the crime or crimes may be, or whether the defendant's motive was shown at all. The presence or absence of motive is, however, a circumstance that you may consider as bearing on the intent of the defendant.

## IV.  Further General Instructions

## A.    Variance in Dates

The Indictment in this case refers to various dates. It does not matter if the Indictment provides that specific conduct is alleged to have occurred on or about a certain date and the

47

evidence indicates that it was actually on another date. The law only requires a substantial similarity between the dates alleged in the Indictment and the dates established by the evidence.

**B.      Particular Investigative Techniques Not Required**

There is no legal requirement that the government prove its case through any particular means. While you are to carefully consider the evidence presented by the government, you need not speculate as to why certain techniques were used or why others were not used. The government is not on trial, and law enforcement techniques are not your concern. Your sole concern is to determine whether or not, based on the evidence or lack of evidence, the guilt of each defendant has been proven beyond a reasonable doubt.

**C.      Preparation of Witnesses**

You have heard evidence that, prior to appearing in court, witnesses have discussed the facts of the case and their testimony with the lawyers. Although you may consider this fact when you are evaluating a witness's credibility, I should tell you that there is nothing improper or unusual about a witness meeting with lawyers before testifying so that the witness can be aware of the subjects he or she will be questioned about, can focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them. Such consultation helps conserve our time during trial. In fact, it would be unusual for a lawyer to call a witness without such consultation.

The weight you give to the fact or the nature of a witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

48

**D.     Testimony of Witnesses Pursuant to a Grant of Immunity**

You have heard the testimony of a witness who testified under a grant of immunity from this Court.  What this means is that the testimony of the witness may not be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the immunity order of this court.

It is of no concern of yours why a witness received court-ordered immunity.  Your sole concern is whether a witness has given truthful testimony in this courtroom before you.  As with any witness, let me emphasize that the issue of credibility need not be decided in an all-or-nothing fashion.  Even if you find that a witness testified falsely in one part, you still may accept their testimony in other parts, or may disregard all of it.  That is a determination entirely for you, the jury.

**E.     Testimony of Cooperating Witnesses**

You have heard from witnesses who testified pursuant to a cooperation agreement with the government.  You may properly consider the testimony of such cooperating witnesses.  Indeed, the testimony of a cooperating witness may be sufficient evidence for a conviction if the jury believes that the testimony establishes guilt beyond a reasonable doubt.  It is also the case that cooperating witness testimony is of such nature that it must be scrutinized with great care and viewed with particular caution when you decide whether to credit that testimony.

Let me say a few other things that you should consider during your deliberations on the subject of the testimony of a cooperating witness.

The fact that a witness is cooperating with the government can be considered by you as bearing upon his credibility.  The weight to be given to the fact of the witness's cooperation is up to you.  It does not follow, however, that simply because a person has admitted to participating in

49

one or more crimes that he is incapable of giving truthful testimony.  Like the testimony of any other witness, cooperating witness testimony should be given such weight as it deserves in light of the facts and circumstances before you, taking into account the witness's demeanor and candor, the strength and accuracy of his recollection, his background, and the extent to which the testimony is or is not corroborated by other evidence in the case.  You are free to accept as much or as little of the witness's testimony as your find credible.

You may also consider whether a cooperating witness has an interest in the outcome of the case and, if so, whether that interest has affected his testimony.  A witness who hopes to obtain leniency may have a motive to testify as he believes the government wishes or he may feel that it is in his interest to incriminate others.  As with any witness, your responsibility is to determine whether any such motive or intent has influenced the witness's testimony and whether the witness has told the truth, in whole or in part.

In sum, in evaluating the testimony of a cooperating witness, you should ask yourselves the following questions: Would the witness benefit more by lying or by telling the truth?  Was any part of the witness's testimony made up because he or she believed or hoped that he or she would somehow receive favorable treatment from the government by testifying falsely, or as the witness believed the government wanted?  Or did the witness believe his or her interests would be best served by testifying truthfully?  If you believe that the witness was motivated by hopes of personal gain, was the motivation one that would cause the witness to lie or was it one that would cause him or her to tell the truth?  Did this motivation color the witness's testimony?

If you find that the testimony of a cooperating witness was false, you should reject it. However, if, after cautious and careful examination of the cooperating witness's testimony and demeanor upon the witness stand, you are satisfied that the witness told the truth, you should accept

50

it as credible and act upon it accordingly.  Again, as with any witness, the issue of credibility need not be decided in an all-or-nothing fashion.  Even if you find that a witness testified falsely in one part, you still may accept that witness's testimony in other parts, or you may disregard all of it.  That is a determination entirely for you, the jury.

You also heard testimony that the cooperating witnesses pleaded guilty to certain criminal charges.  However, you are instructed not to draw conclusions or inferences of any kind about the guilt of the defendants on trial from the fact that the cooperating witnesses pleaded guilty to these charges.  The decisions of these witnesses to plead guilty were personal decisions they made about their own guilt.  It may not be used by you in any way as evidence against or unfavorable to the defendants on trial here.  I also caution you that it is no concern of yours why the government made an agreement with the witnesses.  Your sole concern is whether the witnesses have given truthful testimony here in this courtroom before you.

### F.     Expert Witnesses

You have heard testimony from multiple expert witnesses.  An expert witness is someone who, by education or experience, has acquired learning or experience in a specialized area of knowledge.  Such a witness is permitted to express his or her opinions on matters about which he or she has specialized knowledge and training.  The parties may present expert testimony to you on the theory that someone who is experienced in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

Your role in judging credibility applies to the experts, as well as to other witnesses.  In weighing an expert's opinion, you may consider the expert's qualifications, education, and reason for testifying, as well as all of the other considerations that ordinarily apply, including all other evidence in this case. If you find the opinion of the expert is based on sufficient data, education,

51

and experience, and the other evidence does not give you reason to doubt his or her conclusions, you will be justified in placing reliance on his or her testimony. However, you should not accept witness testimony simply because the witness is an expert. The determination of the facts in this case rests solely with you as the finders of fact.

## G.    Law Enforcement Witnesses

You have heard the testimony of law enforcement witnesses. The fact that a witness may be employed as a law enforcement official or employee does not mean that his or her testimony is necessarily deserving of more or less consideration, or greater or lesser weight, than that of an ordinary witness.

In this context, counsel is allowed to try to attack the credibility of such a witness on the ground that his or her testimony may be colored by a personal or professional interest in the outcome of the case.

It is for you to decide, after reviewing all the evidence, whether to accept the testimony of the law enforcement witnesses, as it is with every other type of witness, and to give to that testimony the weight you find it deserves.

## H.    Uncalled Witnesses

During the trial, you heard reference to names of individuals who did not appear in court to testify. I instruct you that each party had equal opportunity, or lack of opportunity, to call any of these witnesses. Therefore, you should not draw any inferences or reach any conclusions as to what those witnesses would have testified to had they been called. Their absence should not affect your judgment in any way.

As I have said, the law does not impose on a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence, and the burden always rests with the government to prove a defendant's guilt beyond a reasonable doubt.

## I.    Summary Charts: Admitted as Evidence

Some of the exhibits that were admitted into evidence were in the form of charts and summaries. I decided to admit these charts in addition to the underlying documents that they represent in order to save time and avoid unnecessary expense. You should consider them as you would any other evidence.

## J.    Illustrative Aids

During trial, the government showed you what are called "illustrative aids," such as a pill press machine and presentation slides that assisted witnesses in their testimony. These illustrative aids were shown to you to help you understand the witnesses' testimony. They are not themselves evidence and cannot be considered proof of any fact.

It is for you to decide whether the illustrative aid correctly presents the information that you have seen in the evidence. Any conflict between an illustrative aid and the testimony and evidence that have actually been received must be resolved in favor of the actual evidence. That is because the evidence controls, and an illustrative aid is not evidence.

## K.    Spanish Language Testimony

Multiple witnesses in this trial testified in Spanish. That testimony was translated into English for you by a court-certified interpreter. When testimony has been presented in a language other than English you must base your decision on the testimony presented through the official court interpreters.

The interpreters were here only to help us communicate during the proceedings.  They are not parties in the case, have no interest in the case, and are completely neutral.  Accordingly, please treat the interpretation of a witness's testimony as if the witness had spoken English and no interpreter was present.  Do not allow the fact that a witness's underlying testimony was given in Spanish, or that the interpreter assisted the defendant in translation, to influence you in any way.

Even if you speak Spanish, you are obligated under the law to accept as binding the translations of witness testimony provided to you by the court-certified interpreter.

## L.    Use of Audio Recordings, Transcripts, and Translations

Recordings of various Spanish-language conversations and other Spanish-language materials have been admitted into evidence, and the transcripts of English-language translations of those foreign-language recordings and materials have been admitted into evidence.  As with the oral testimony that I just discussed, I instruct you that the English translation on those transcripts is the evidence.  As a result, you should not substitute your own understanding of Spanish for that of any English translation that was admitted in evidence; you must accept the translations without regard to your own understanding of Spanish.

If you wish to hear any of the recordings again, or see any of the English-language transcripts of the Spanish-language recordings or materials, they will be made available to you during your deliberations.

## M.    The Defendants' Right Not to Testify

The defendants chose not to testify in this case.  Under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the government's burden to prove the defendant guilty beyond a reasonable doubt.  That burden remains with the government

54

throughout the entire trial and never shifts to a defendant.  A defendant is never required to prove that he or she is innocent.

Therefore, you may not attach any significance to the fact that the defendants did not testify.  No adverse inference against the defendants may be drawn by you merely because the defendants did not take the witness stand.  You may not consider this against the defendants in any way in your deliberations in the jury room.

**N.    Persons Not on Trial or Not Indicted**

Some of the persons who may have been involved in the events leading to this trial are not on trial.  This does not matter.  There is no requirement that all members of a conspiracy be charged, prosecuted, or tried together in the same proceeding.  You may not draw any inference, favorable or unfavorable, toward the government or the defendants from the fact that certain persons other than the defendants were not named in the Indictment.  Nor may you speculate as to the reasons why other persons are not on trial.  Those matters are wholly outside your concern and have no bearing on your function as jurors.  Whether a person should be named as a co-conspirator or indicted as a defendant in this case or another separate case is a matter within the sole discretion of the United States Attorney and the Grand Jury.  Thus, you may not consider it in any way in reaching your verdict as to the defendants.

**O.    Use of Evidence Obtained Pursuant to Searches**

You have heard testimony about evidence seized in various searches of physical locations and electronic devices.  Evidence obtained from those searches was properly admitted in this case and may be properly considered by you.   Indeed, such searches are entirely appropriate law enforcement actions.  Whether you approve or disapprove of how the evidence was obtained should not enter into your deliberations, because I instruct you that the government's use of the

55

evidence is lawful.  You must, therefore, regardless of your personal opinions, give this evidence full consideration along with all the other evidence in the case in determining whether the government has proved the defendants' guilt beyond a reasonable doubt.  Once again, however, it is for you to decide what weight, if any, to give to this evidence.

### V.  Final Instructions Regarding Jury Deliberations

#### A.    Duties of the Foreperson

The first thing you should do when you retire to deliberate is take a vote to select one of you to sit as your foreperson.  The foreperson will send out any notes, and when the jury has reached a verdict, he or she will notify the Court Security Officer that the jury has reached a verdict, and when you come into open court, the foreperson will be asked to state what the verdict is.

#### B.    Right to See Exhibits and Hear Testimony; Communications with Court

 A list of the witnesses who testified at trial and of the exhibits introduced into evidence will be sent to you in the jury room, along with a copy of the Indictment, a copy of my instructions on the law, and a copy of the verdict form.  You also will have in the jury room a laptop on which any admitted electronic exhibits are uploaded.  If you want to see hard copies of any of those exhibits or any of the non-electronic exhibits or if you want to read or hear any of the testimony during your deliberations, that can be arranged.  Please appreciate that it is not always easy to locate any testimony that you might want, so be as clear and precise as you possibly can.  Any communication with me, whether requesting exhibits or testimony or otherwise, should be made in writing, signed by the foreperson with the date and time indicated, and given to the Court Security Officer.  Any notes will become part of the record in this case.  I will respond to any questions or requests you have as promptly as possible, either in writing or by having you return

56

to the courtroom so I can speak with you in person.  In any event, do not tell me or anyone else how the jury stands on the issue of the defendant's guilt until after a unanimous verdict is reached.

## C.    Notes

Many of you have taken notes periodically throughout this trial.  I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory.  Notes that any of you may have taken should not be given any greater weight or influence in determination of the case than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence.  Any difference between a juror's recollections and another juror's notes should be settled by referring to the transcript, for it is the court record rather than any juror's notes upon which the jury must base its determination of the facts and its verdict.

## D.    Improper Considerations:  Race, Religion, National Origin, Sex, or Age

Your verdict must be based solely upon the evidence developed at trial or the lack of evidence.  In reaching your decision as to whether the government sustained its burden of proof, it would be improper for you to consider any personal feelings—positive or negative—you may have about a defendant's race, religion, national origin, sex, or age.  The defendants and the government are entitled to a trial free from prejudice, and our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

## E.    Verdict Form and Return of Verdict

We have prepared a verdict form for you to use in recording your decisions.  After you have reached a verdict, the foreperson should fill in the verdict sheet, sign it noting the date and time, and then give a **note**—not the verdict sheet—to the Court Security Officer outside your door stating simply that you have reached a verdict.  **Do not** specify what the verdict is in your note.

57

Instead, the foreperson should retain the verdict sheet, and give the verdict to me in open court when you are all called in.

I will stress again that each of you must be in agreement with the verdict that is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

## F.    Juror Oath

I remind you that you took an oath to render judgment impartially and fairly, without prejudice or sympathy, solely upon the evidence in the case and the applicable law. I know that you will do this and reach a just and true verdict.

Under your oath as jurors, you are not to be swayed by sympathy. If you let sympathy—or for that matter, prejudice or bias—interfere with your thinking, there is a risk that you will not arrive at a true and just verdict. Rather, you are to be guided solely by the evidence or lack of evidence in this case and the law as I have instructed you. And as you sift through that evidence, the crucial question for you and you alone to decide as to each count against the defendant is: Has the prosecution proved each element beyond a reasonable doubt?

If you have a reasonable doubt as to a defendant's guilt with respect to a particular count, then you must render a verdict of acquittal on that particular count. But, on the other hand, if you find that the prosecution has met its burden of proving guilt beyond a reasonable doubt with respect to a particular count, then you should not hesitate because of sympathy or any other reason to render a verdict of guilty on that count.

I also caution you that, under your oath as jurors, you cannot allow to enter into your deliberations any consideration of the punishment that may be imposed upon the defendant if he is convicted. The duty of imposing a sentence in the event of conviction rests exclusively with me

58

and the issue of punishment may not affect your deliberations as to whether the government has proved the defendants' guilt beyond a reasonable doubt.

## G.      Everyone Must be Present

You are not to discuss the case unless all jurors are present.  Nine, ten, or even eleven jurors together is only a gathering of individuals.  Only when all twelve jurors are present do you constitute a jury, and only then may you deliberate.

## H.      Remaining Issues

I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like me to give to you, or if there is anything I may not have covered.

## VI.  Conclusion

Members of the jury, that concludes my instructions to you.  You may now retire to the jury room and begin this phase of your deliberations.  As the first matter of business, please select a foreperson and send me a note, signed, dated, and timed, through the Court Security Officer, telling me whom you have elected as your foreperson.  In conclusion, ladies and gentlemen, I am sure that if you listen to the views of your fellow jurors and if you apply your own common sense you will reach a fair verdict here.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                      :
UNITED STATES OF AMERICA,                             :
                                                      :
                                                      :
                                                      :
         -v-                                          :            23 Cr. 501 (JPC)
                                                      :
FRANCISCO ALBERTO LOPEZ REYES and                     :            **VERDICT FORM**
EDWARD EUSTATE JIMENEZ,                                :
                                                      :
                   Defendants.                        :
                                                      :
------------------------------------------------------------------X

      Do not write anything on this form except to check a response or to sign and date the form. **The Jury's verdict must be unanimous on each question.**

### <u>COUNT ONE</u>
### Continuing Criminal Enterprise

1.  How do you find the defendant, **Francisco Alberto Lopez Reyes**, with respect to Count One?

        Not Guilty _____        Guilty _____

*If you find **Francisco Alberto Lopez Reyes** "Not Guilty" of Count One, please skip to Count Two (Question 5).*

*If, and only if, you find **Francisco Alberto Lopez Reyes** "Guilty" of Count One, please answer the following questions.*

2.  Which three or more violations did **Francisco Alberto Lopez Reyes** commit?

      Violation One  _____        Violation Five  _____

      Violation Two  _____        Violation Six  _____

      Violation Three  _____        Violation Seven  _____

      Violation Four  _____

3.  Was **Francisco Alberto Lopez Reyes** a principal administrator, organizer, or leader of the enterprise?

No _____                    Yes _____

*If you answer "No" to Question 3, please skip to Count Two (Question 5).*

*If, and only if, you answer "Yes" to Question 3, please answer the next question or questions.*

4.  Did at least one violation involve any of the following quantities of mixtures or substances: at least 3 kilograms containing para-fluorofentanyl, at least 12 kilograms containing fentanyl, or at least 15 kilograms containing methamphetamine?

No _____                    Yes _____

If Yes, which violation(s)?

Violation One    _____              Violation Five    _____

Violation Two    _____              Violation Six    _____

Violation Three _____              Violation Seven _____

Violation Four    _____

2

### COUNT TWO
**Conspiracy to Distribute Narcotics**

5.  How do you find the defendant, **Francisco Alberto Lopez Reyes**, with respect to Count Two?

        Not Guilty _____              Guilty _____

6.  How do you find the defendant, **Edward Eustate Jimenez**, with respect to Count Two?

        Not Guilty _____              Guilty _____

*If you find both defendants "Not Guilty" of Count Two, please skip to Count Three (Question 11). Otherwise, please answer the following.*

**Francisco Alberto Lopez Reyes (Count Two)**

*If, and only if, you find **Francisco Alberto Lopez Reyes** "Guilty" on Count Two in Question 5 above, please answer Question 7 and, if appropriate, Question 8.*

7.  Was it known to **Francisco Alberto Lopez Reyes** that the conspiracy involved any of the following substances?  Please answer "No" or "Yes" for each substance below.  If "Yes," please indicate the amount:

    a.  <u>Para-fluorofentanyl</u>:  No _____        Yes _____

           _____ less than 10 grams; or

           _____ at least 10 grams, but less than 100 grams; or

           _____ at least 100 grams

    b.  <u>Fentanyl</u>:  No _____        Yes _____

           _____ less than 40 grams; or

           _____ at least 40 grams, but less than 400 grams; or

           _____ at least 400 grams

3

    c.  <u>Methamphetamine</u>:  No _____      Yes ___

        _____ less than 50 grams; or

        _____ at least 50 grams, but less than 500 grams; or

        _____ at least 500 grams

    d.  <u>Heroin</u>:  No _____      Yes _____

        _____ less than 100 grams; or

        _____ at least 100 grams, but less than one kilogram; or

        _____ at least one kilogram

    e.  <u>Cocaine</u>:  No _____      Yes _____

        _____ less than 500 grams; or

        _____ at least 500 grams

*If, and only if, you answered "Yes" to Question 7.a. or 7.b., please answer Question 8.*

8.  Did the use of fentanyl and/or para-fluorofentanyl distributed by members of the conspiracy joined by **Francisco Alberto Lopez Reyes** result in the death of Holly Holderbaum?

        No _____            Yes _____

4

**Edward Eustate Jimenez (Count Two)**

*If, and only if, you find **Edward Eustate Jimenez** "Guilty" on Count Two in Question 6 above, please answer Question 9 and, if appropriate, Question 10.*

9. Was it known to **Edward Eustate Jimenez** that the conspiracy involved any of the following substances?  Please answer "No" or "Yes" for each substance below.  If "Yes," please indicate the amount:

  a.  <u>Para-fluorofentanyl</u>:  No _____        Yes _____

     _____ less than 10 grams; or

     _____ at least 10 grams, but less than 100 grams; or

     _____ at least 100 grams

  b.  <u>Fentanyl</u>:  No _____        Yes _____

     _____ less than 40 grams; or

     _____ at least 40 grams, but less than 400 grams; or

     _____ at least 400 grams

  c.  <u>Methamphetamine</u>:  No _____        Yes _____

     _____ less than 50 grams; or

     _____ at least 50 grams, but less than 500 grams; or

     _____ at least 500 grams

  d.  <u>Heroin</u>:  No _____        Yes _____

     _____ less than 100 grams; or

     _____ at least 100 grams, but less than one kilogram; or

     _____ at least one kilogram

  e.  <u>Cocaine</u>:  No _____        Yes _____

     _____ less than 500 grams; or

     _____ at least 500 grams

5

6

*If, and only if, you answered "Yes" to Question 9.a. or 9.b., please answer Question 10.*

10. Did the use of fentanyl and/or para-fluorofentanyl distributed by members of the conspiracy joined by **Edward Eustate Jimenez** result in the death of Holly Holderbaum?

No _____                    Yes _____

6

## COUNT THREE
### Distribution of Narcotics

11. How do you find the defendant, **Francisco Alberto Lopez Reyes**, with respect to Count Three?

Not Guilty _____          Guilty _____

12. How do you find the defendant, **Edward Eustate Jimenez**, with respect to Count Three?

Not Guilty _____          Guilty _____

*If you find both defendants "Not Guilty" of Count Three, please skip to Count Four (Question 15). Otherwise, please answer the following.*

### Francisco Alberto Lopez Reyes (Count Three)

*If, and only if, you find **Francisco Alberto Lopez Reyes** "Guilty" of Count Three in Question 11 above, please answer Question 13.*

13. Did the use of fentanyl and/or para-fluorofentanyl that **Francisco Alberto Lopez Reyes** distributed, possessed with intent to distribute, or aided and abetted the same, result in the death of Holly Holderbaum?

No _____          Yes _____

### Edward Eustate Jimenez (Count Three)

*If, and only if, you find **Edward Eustate Jimenez** "Guilty" of Count Three in Question 12 above, please answer Question 14.*

14. Did the use of fentanyl and/or para-fluorofentanyl that **Edward Eustate Jimenez** distributed, possessed with intent to distribute, or aided and abetted the same, result in the death of Holly Holderbaum?

No _____          Yes _____

7

## COUNT FOUR
### Conspiracy to Commit Money Laundering

15. How do you find the defendant, **Francisco Alberto Lopez Reyes**, with respect to Count Four?

Not Guilty _____          Guilty _____

*The Foreperson should ensure that each juror agrees with the answer to each Question that the Jury is required to answer above. If so, your deliberations have concluded, and the Foreperson and the rest of the jurors should sign and date below. Then, notify the Court Security Officer that you have reached a verdict. Do not tell the Court Security Officer what the verdict is.*

Dated: _____, 2026
         New York, New York

_____
                        Foreperson

8